**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| *In re Stryker Corporation Cyberattack Litigation* | Case No. 1:26-CV-00832-HYJ-PJG<br><br>Hon. Hala Y. Jarbou<br>Hon. Philip J. Green |

# Stryker Corporation's Brief in Support of Its Motion for Phased Discovery

**DLA PIPER LLP (US)**
Colleen Carey Gulliver
1251 Avenue of the Americas
New York, New York 10020
Tel: 212-335-4500
colleen.gulliver@us.dlapiper.com

**MILLER JOHNSON PLC**
D. Andrew Portinga
Amy E. Murphy
45 Ottawa Avenue SW
Suite 1100
Grand Rapids, Michigan 49503
Tel: 616-831-1700
portingaa@millerjohnson.com
murphya@millerjohnson.com

## Table of Contents

| | | Page |
|---|---|---|

Factual Background ........................................................................................ 3

    A.    Stryker Was the Victim of a Cyberattack and Plaintiffs Sued 48 Hours Later. .................................................................................................. 3

    B.    Plaintiffs' CAC Does Not Establish Article III Standing. ........................ 3

    C.    Stryker Has No Evidence Plaintiffs' PII Was Accessed. ............................ 5

    D.    Plaintiffs Will Seek Expansive Discovery. .................................................. 7

Legal Standard .............................................................................................. 8

Argument ...................................................................................................... 8

I.    Plaintiffs Must Establish Standing Before They Can Conduct Merits Discovery. .................................................................................................. 8

II.    Plaintiffs Lack Standing. ........................................................................ 10

    1.    Stryker Has No Evidence Plaintiffs' PII Was Accessed in the Cyberattack. ............................................................................... 11

    2.    Plaintiffs Cannot Show That Any Injury is Fairly Traceable to Stryker. ...................................................................................... 12

III.    Phasing Discovery Promotes Judicial Economy and Will Not Prejudice Plaintiffs. ................................................................................................ 15

A.    Limited Discovery Will Increase Judicial Economy. ............................... 15

B.    Plaintiffs Will Not Be Prejudiced. .......................................................... 16

Conclusion .................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balow v. Michigan State Univ.*,
No. 1:21-cv-44, 2021 WL 4316771 (W.D. Mich. Sept. 22, 2021)
(Jarbou, C.J.) ........................................................................................................ 9

*Blood v. Labette County Medical Ctr.*,
No. 5:22-cv-4036, 2022 WL 11745549 (D. Kan. Oct. 20, 2022) ........................... 13

*Buchholz v. Meyer Njus Tanick. PA*,
946 F.3d 855 (6th Cir. 2020) ........................................................................ 11, 13

*Crawford-El v. Britton*,
523 U.S. 574 (1998) ........................................................................................ 2, 8

*In re Data Breach Security Litigation Against Caesars Entertainment*,
No. 2:23-cv-01447, 2025 WL 2927046 (D. Nev. Oct. 14, 2025) ........................... 16

*Dayton Area Chamber of Commerce v. Becerra*,
696 F. Supp. 3d 440 (S.D. Ohio 2023)................................................................. 9

*Fania v. Kin Insurance*,
No. 22-cv-12354, 2024 WL 2607303 (E.D. Mich. May 24, 2024) ................... 15, 16

*Fedorova v. Foley*,
No. 1:22-cv-991, 2023 WL 3379957 (W.D. Mich. May 11, 2023)
(Jarbou, C.J.) ............................................................................................. 1, 9, 10

*Fieger v. Mich. Supreme Court*,
553 F.3d 955 (6th Cir. 2009) .............................................................................. 8

*Grenke v. Hearst Communications*,
No. 12-cv-14221, 2014 WL 6909883 (E.D. Mich. Dec. 8, 2014) .......................... 10

*Guido v. Travelers Cos.*,
No. 2:23-cv-83, 2023 WL 5658920 (E.D. Ky. Aug. 31, 2023)......................... 15, 16

*Hohman v. Eadie*,
894 F.3d 776 (6th Cir. 2018) .............................................................................. 9

*Little Traverse Bay Bands of Odawa Indians v. Snyder*,
194 F. Supp. 3d 648 (W.D. Mich. 2016) ............................................................. 15

*Miedel v. Ally Bank,*
    No. 1:25-cv-406, 2025 WL 2751533 (W.D. Mich. Sept. 29, 2025)
    (Jarbou, C.J.) ................................................................................ 11, 12

*MSP Recovery Claims, Series LLC. v. Progressive Corp.,*
    No.1:18-cv-2273, 2020 WL 13093772 (N.D. Ohio Jun. 4, 2020) ...................... 9, 10

*Muniz v. Bronson Health Care Group,*
    No. 1:25-cv-693, 2026 WL 1649197 (W.D. Mich. Jan. 20, 2026).....................12, 14

*Murthy v. Missouri,*
    603 U.S. 43 (2024) ............................................................................ 14

*Perry v. Allstate Indemnity Co.,*
    953 F.3d 417 (6th Cir. 2020) ................................................................ 9

*Polkowski v. Jack Doheny Cos.,*
    No. 2:25-cv-10516, 2025 WL 3079358 (E.D. Mich. Nov. 4, 2025) .................... 6, 11

*Rhodes v. McDannel,*
    945 F.2d 117 (6th Cir. 1991) ................................................................ 8

*Romero v. City of Lansing Mich.,*
    159 F.4th 1002 (6th Cir. 2025)........................................................... 2, 11

*Series 15-09-321 v. Progressive Corp.,*
    No. 1:23-cv-02015, 2024 WL 4679223 (N.D. Ohio Sep. 27, 2024)........................ 15

*Shepherd v. Cancer & Hematology Ctrs. of W. Mich.,*
    No. 1:22-cv-734, 2023 WL 4056342 (W.D. Mich. 2023).........................6, 11, 13, 14

*Sifuentes v. Pluto TV,*
    No. 1:23-cv-1013, 2023 WL 7319434 (W.D. Mich. Nov. 7, 2023) .......................... 11

*Thompson v. Equifax Information Services,*
    441 F. Supp. 3d 533 (E.D. Mich. 2020).................................................... 9

*Trepel v. Roadway Exp., Inc.,*
    194 F.3d 708 (6th Cir. 1999) ................................................................ 8

*US HF Cellular Communications v. Scottsdale,*
    776 F. App'x 275 (6th Cir. 2019) .......................................................... 15

*Williams v. Bienville Orthopaedic Specialists,*
    737 F. Supp. 3d 411 (S.D. Miss. 2024)................................................... 13

*Yuhasz v. Brush Wellman, Inc.,*
    341 F.3d 559 (6th Cir. 2003) ................................................................................ 16

## Other Authorities

Fed. R. Civ. P. 26(f)(3) ........................................................................................... 2

Fed. R. Civ. P. 26(f)(3)(B) ...................................................................................... 8

**Introduction**

Merely 48 hours after Stryker Corporation ("Stryker") announced on March 11, 2026, that it had experienced a cyberattack (the "Cyberattack"), plaintiffs Tom Mesmer, Dax Dodge, Joseph Fredrickson, Scott Mangold, Maurice Primer, Tristan Tanner, Belva Thompson, and Stacy Trepanier ("Plaintiffs") began filing lawsuits, each speculating that their personally identifiable information ("PII") was accessed.  Stryker respectfully submits this memorandum of law in support of its motion for phased discovery until its forthcoming motion to dismiss (the "MTD") is resolved.  Stryker respectfully requests that initial discovery be limited solely to facts directly relevant to whether Plaintiffs were *in fact* injured by the Cyberattack—a predicate for Article III standing and hence subject matter jurisdiction.

Federal courts "have an independent obligation to investigate and police the boundaries of their own jurisdiction" and "the Court *may not* proceed to the merits . . . before establishing a basis upon which to exercise subject matter jurisdiction." *Fedorova v. Foley*, No. 1:22-cv-991, 2023 WL 3379957, at *1 (W.D. Mich. May 11, 2023) (Jarbou, C.J.) (emphasis added) (citations omitted) (staying case pending resolution of motion to dismiss for lack of subject matter jurisdiction).  Such is the case here, as Plaintiffs' allegations of subject matter jurisdiction cannot stand up to Stryker's factual challenge, which the Court can consider and resolve on the forthcoming MTD.

This is a quintessential case in which, pursuant to Rule 26, the Court should consider "whether discovery should be conducted in phases or be limited to or focused on particular issues." Fed. R. Civ. P. 26(f)(3). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). This case calls for such sequencing.

"Even at the motion-to-dismiss stage, [a plaintiff] must plead specific facts beyond speculation[.]" *Romero v. City of Lansing Mich.*, 159 F.4th 1002, 1015 (6th Cir. 2025). But the Consolidated Complaint offers only conclusory allegations of harm, and no Plaintiff can demonstrate that they were injured by the Cyberattack. For example, each Plaintiff has had various iterations of PII exposed in earlier breaches. Mangold's Stryker employment ended in 2007, and Stryker has not possessed his records for years. Thompson reported that she was a victim of identity theft *multiple times* before the Cyberattack, and Tanner sued another former employer just a week *before* filing the Consolidated Complaint, claiming that the same information was accessed. None of the Plaintiffs, moreover, has alleged (or can allege) that Stryker notified them that their personal data was accessed in the Cyberattack, even though such notification would be required by the governing legal framework in various jurisdictions.

In opposing Stryker's MTD, Plaintiffs will bear the burden of establishing, *as a factual matter* and not simply as a matter of conclusory allegations afforded a presumption of truthfulness, that subject matter jurisdiction exists. When, as here,

2

Stryker will support its MTD with declarations and other evidence similar to the declarations submitted herewith, to the effect that "Stryker's investigation into the Cyberattack . . . did not uncover any evidence that Plaintiffs' PII was accessed in the Cyberattack" (June 15, 2026 Declaration of Juan Pablo Calderon ("Calderon Decl." ) ¶ 5),  Plaintiffs will bear the burden of *proving* that this Court has subject matter jurisdiction.  If they cannot, the case should be dismissed.  For precisely that reason, the Court should first limit discovery to the issue of Plaintiffs' standing.

## Factual Background

### A.    Stryker Was the Victim of a Cyberattack and Plaintiffs Sued 48 Hours Later.

On March 11, 2026, Stryker announced that it had experienced an unprecedented Cyberattack, "which caused disruptions to [its] business operations." Calderon Decl. ¶ 3.  Plaintiffs allege that an Iranian nation-state cybercriminal group called "Handala" claimed credit for the Cyberattack and claimed to have wiped certain data from Stryker's systems.  Consolidated Class Action Complaint ("CAC"), ECF No. 15, PageID.94 ¶ 38 & PageID.96 ¶ 42.

48 hours later, Plaintiffs began to sue.  *See* ECF No. 1 (Mesmer Compl., dated Mar. 13, 2026).  Plaintiffs alleged that their PII and protected health information ("PHI") had been accessed.  However, no Plaintiff alleged they received a notice from Stryker informing them that their data had been accessed (nor could they).

### B.    Plaintiffs' CAC Does Not Establish Article III Standing.

On May 8, 2026, Plaintiffs filed the CAC and alleged that PII was disclosed: names, social security numbers, unspecified financial account information,

unspecified health insurance information, and unspecified driver's license information.  CAC, PageID.92 ¶ 28.  Plaintiffs' CAC does not allege that any Plaintiff received a notice from Stryker informing them that their PII was accessed.  *See generally id.*  Instead, Plaintiffs repeat vague allegations of a host of theoretical injuries: "exposure and theft of [their] PII" (*id.* PageID.99 ¶ 60, PageID.101 ¶ 82, PageID.103 ¶ 100, PageID.105 ¶ 118, PageID.107 ¶ 137, PageID.109 ¶ 154, PageID.111 ¶ 175, PageID.113 ¶ 192), "fear," and "anxiety" (*id.* PageID.99 ¶¶ 58-59, PageID.101 ¶¶ 80-81, PageID.103 ¶¶ 98-99, PageID.105 ¶¶ 116-117, PageID.107 ¶¶ 135-36, PageID.109 ¶¶ 152-53, PageID.111 ¶¶ 173-74, PageID.113 ¶¶ 190-91), "diminution in the value of [their] PII" (*id.* PageID.99 ¶¶ 61, PageID.102 ¶ 83, PageID.104 ¶ 101, PageID.106 ¶ 119, PageID.108 ¶ 138, PageID.109 ¶ 155, PageID.112 ¶ 176, PageID.113 ¶ 193), and "a spike in spam and scam" phone calls, emails, or text messages (*id.* PageID.101 ¶ 79, PageID.111 ¶ 172, PageID.113 ¶ 189).  They also allege that their "PII has already been published—or will be . . . imminently" on "the dark web" (*id.* PageID.101 ¶ 76, PageID.103 ¶ 95, PageID.105 ¶ 112, PageID.107 ¶ 131, PageID.109 ¶ 149), which would purportedly cause future injuries of misuse and "spending considerable amounts of time and money to try to mitigate [their] injuries" (*see, e.g., id.* PageID.99 ¶¶ 62-63, PageID.102 ¶¶ 84-85, PageID.104 ¶¶ 102-03, PageID.106 ¶¶ 120-21, PageID.108 ¶¶ 139-40, PageID.110 ¶¶ 156-57, PageID.112 ¶¶ 177-78, PageID.114 ¶¶ 194-95).

Certain Plaintiffs vaguely allege purported suspicious activity that they speculate is tied to the Cyberattack, apparently based on timing alone: (1) Mesmer

alleges that "around the time of" the Cyberattack he received a fraudulent message to his (public) LinkedIn account (*id.* PageID.99 ¶ 56); (2) Primer alleges that "shortly after" the Cyberattack he experienced unspecified fraudulent activity on his Apple account (*id.* PageID.107 ¶ 133), but he does not allege that that account was accessed in the Cyberattack; and (3) Mangold similarly alleges that "around the time of" the Cyberattack he "received a dark web alert from LifeLock . . . [that] an email and password he used during [the] time he worked with Stryker[] was found on the dark web" yet he does not allege that this information was accessed in the Cyberattack (*id.* PageID.105 ¶ 114).

Similarly, Thompson alleges that "right after" the Cyberattack she "received a denial notice for a credit application she did not submit," "an unauthorized account was opened in her name," her "credit score dropped," and that "[o]n or about March 17, 2026," she received "multiple alerts . . . indicating her [unspecified] login credentials had been found on the dark web" and the "same day, she was locked out of her bank account twice." (*Id.* PageID.111 ¶¶ 167-170).  Thompson, however, also fails to allege that the information needed to undertake these activities was the PII allegedly accessed in the Cyberattack.

C.    **Stryker Has No Evidence Plaintiffs' PII Was Accessed.**

While Plaintiffs allege both that they were injured *and* that their alleged injuries are due to the Cyberattack, Plaintiffs' allegations are demonstrably untrue.[1]  The CAC relies on supposition and assumptions and points to no evidence

---

[1] As discussed below, when a defendant makes a factual challenge to standing, the Court can consider factual declarations like those submitted in

that Plaintiffs' PII was accessed—because, in fact, there is no evidence that it was. Calderon Decl. ¶ 5.

The specifics of each Plaintiffs' individual circumstances also undermine his or her suppositions that they were injured by the Cyberattack.  For example, while Mangold alleges that he is a "former employee" of Stryker, which "continues to maintain [his] PII" (CAC PageID.104 ¶ 105, PageID.105 ¶ 110), he does not acknowledge that his employment ended in "July 2007," *19 years ago*.  June 12, 2026 Declaration of Michael Puca ("Puca Decl.") at ¶¶ 4, 5.  Stryker "did not locate any files for Mr. Mangold," which is not surprising given that "an employee's personnel file is [held for] a period of six years after their employment ends" and "Stryker . . . would have ceased retaining [Mangold's] physical personnel file [in or around 2013]", or more than a decade before the Cyberattack.  Puca Decl. ¶¶ 5, 6.

In addition, multiple other Plaintiffs apparently had PII accessed in wholly unrelated cyber incidents.  While Thompson claims that her PII was "compromised" in the Cyberattack (CAC PageID.111 ¶ 166), she fails to disclose that she filed at least *three* prior reports about her identity being stolen.  Specifically, (1) in October

---

support of this motion, which the plaintiff must then disprove with their own factual evidence to carry their burden.  *See Shepherd v. Cancer & Hematology Ctrs. of W. Mich.*, No. 1:22-cv-734, 2023 WL 4056342, at *4-5 (W.D. Mich. 2023) (Courts have "wide discretion to consider [evidence] outside the pleadings when resolving [a] factual attack on [standing].");  *accord Polkowski v. Jack Doheny Cos.*, No. 2:25-cv-10516, 2025 WL 3079358, at *6 (E.D. Mich. Nov. 4, 2025).  *Shepherd* is particularly instructive, with Judge Maloney crediting a declaration stating that there was "no indication that any of Plaintiff's personal information was compromised" where "Plaintiff has provided no evidence to the contrary," finding that there was "[no] injury in fact" and hence "[no] subject matter jurisdiction."  2023 WL 4056342, at *4-5, *7.

2017, she reported "fraud" when she "checked her Experian credit bureau report" where she saw "an apparent attempt by somebody to change her personal data" (June 15, 2026 Declaration of William Hardin ("Hardin Decl.") at Ex. C); (2) in September 2020, she reported she was "defrauded out of unemployment compensation and [her] identity stolen along with [her] social security information [and she did] not know what else could have been taken or compromised" (*id.* at Ex. D); and (3) in September 2021, she reported that "[her] unemployment insurance was stolen, someone took over [her] platform and put their information in and changed the banking details and now prevented [her] from appl[y]ing or having access to [her] account" (*id.* at Ex. E).

Similarly, Tanner alleges his PII was "compromised" (CAC PageID.109 ¶ 150) but does not acknowledge that one week earlier he sued another former employer, Medtronic, alleging that the *same information* he alleges was accessed here "has presumably been compromised" in an incident Medtronic purportedly suffered on April 17, 2026. *Compare* June 15, 2026 Declaration of Colleen M. Gulliver ("Gulliver Decl.") Ex. B ¶ 27 ("likely includ[ing]" his name, social security number, and driver's license information), *with* CAC PageID.92 ¶ 28, PageID.109 ¶150.

In fact, *each* Plaintiff has been impacted by numerous prior data breaches, including 4 Plaintiffs whose social security numbers have been accessed. Hardin Decl. ¶¶ 20, 31, 35, 38. For example, Thompson and Tanner's data were involved in at least 20 data breaches before the Cyberattack. *Id.* ¶¶ 20, 42.

### D.    Plaintiffs Will Seek Expansive Discovery.

The parties appeared before Magistrate Judge Green on April 27, 2026, for a

7

Status Conference where the parties discussed how discovery should proceed. Stryker explained that Plaintiffs' standing was in question because it was not clear that their PII "was accessed by the hackers." Gulliver Decl. Ex. A, at 19:18-20:15. Stryker suggested limiting discovery, but Plaintiffs objected, indicating that they will seek expansive discovery of: (1) Stryker's "security policies and procedures" and "IT processes" (*id.* 16:25-17:3); (2) "how the breach occurred" (*id.* 17:9-11); (3) "what steps Stryker took in response to the breach" (*id.* 17:18-20); and (4) "what steps Stryker is taking to avoid such a breach occurring in the future" (*id.* 17:20-22).

## Legal Standard

This Court has "broad discretion" in regulating discovery. *Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991); *see also Trepel v. Roadway Exp., Inc.*, 194 F.3d 708, 716 (6th Cir. 1999) (a court has "wide latitude of discretion" in "limit[ing] discovery"). Rule 26 encourages courts to consider "whether discovery should be conducted in phases or be limited to or focused on particular issues." Fed. R. Civ. P. 26(f)(3)(B). As the Supreme Court acknowledges, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton,* 523 U.S. 574, 598 (1998).

## Argument

I.    **Plaintiffs Must Establish Standing Before They Can Conduct Merits Discovery.**

"[S]tanding is [a] 'threshold question in every federal case.'" *Fieger v. Mich. Sup. Ct.*, 553 F.3d 955, 961 (6th Cir. 2009) (citation omitted). "[C]lass representatives must demonstrate 'individual standing vis-à-vis the defendant;

8

[they] cannot acquire such standing merely by virtue of bringing a class action.'"

*Perry v. Allstate Indem. Co.*, 953 F.3d 417, 420 (6th Cir. 2020) (citation omitted);

*Balow v. Mich. State Univ.*, No. 1:21-cv-44, 2021 WL 4316771, at *7 (W.D. Mich.

Sep. 22, 2021) (Jarbou, C.J.) (same).  "Thus, if a plaintiff does not have standing, the

court lacks subject matter jurisdiction."  *Thompson v. Equifax Info. Servs.*, 441

F. Supp. 3d 533, 539 (E.D. Mich. 2020).

Courts have repeatedly limited discovery to jurisdictional issues where, as

here, the Court's subject matter jurisdiction is doubtful.  *See Hohman v. Eadie*, 894

F.3d 776, 787 (6th Cir. 2018) (affirming decision to limit discovery to address

"jurisdictional issues"); *MSP Recovery Claims, Series LLC. v. Progressive Corp.*,

No.1:18-cv-2273, 2020 WL 13093772, at *1 (N.D. Ohio Jun. 4, 2020) (limiting

discovery to standing); *Dayton Area Chamber of Com. v. Becerra*, 696 F. Supp. 3d

440, 444 (S.D. Ohio 2023) (same).  Without subject matter jurisdiction, the Court

cannot reach the merits—including *discovery* on merits issues.

In *Fedorova*, this Court stayed discovery pending resolution of motions to

dismiss based on a "lack of subject matter jurisdiction," holding that "the [c]ourt

may not proceed to the merits . . . before establishing a basis upon which to exercise

subject matter jurisdiction."  2023 WL 3379957, at *1.  This Court recognized that

"[t]he purpose of a motion to dismiss for failure to state a claim 'is to enable

defendants to challenge the legal sufficiency of complaints without subjecting

themselves to discovery'" and it would not serve "judicial economy" to proceed with

the case because it "may result in a needless expenditure of the Court's and the parties' resources."  *Id.* (citations omitted).

*Grenke v. Hearst Communications* is directly on point.  No. 12-cv-14221, 2014 WL 6909883 (E.D. Mich. Dec. 8, 2014).  There, the plaintiff claimed that his "personal reading information" from magazine purchases was sold without his consent.  *Id.* at *1.  The defendant moved to dismiss because "plaintiff d[id] not have standing" as the defendant submitted a declaration stating that the company "ha[d] no record of plaintiff purchasing any of its magazines" nor any data being sold.  *Id.* The Court agreed that a stay of discovery was warranted as to discovery "unrelated to the issue of subject-matter jurisdiction . . . until resolution of the pending motion to dismiss."  *Id.* at *3.

Similarly, in *MSP Recovery Claims*, an assignor sought recovery and the Court bifurcated discovery to focus only on the assignor's standing because it was a "threshold issue" that "implicate[d] . . . the Court's jurisdiction" and "must [be] consider[ed] before proceeding with class discovery."  2020 WL 13093772, at *1.

The same is warranted here.  For the Court to have subject matter jurisdiction, Plaintiffs must establish Article III standing.  Without standing, Plaintiffs cannot engage in merits discovery.  A contrary holding simply puts the cart before the horse.

## II.    Plaintiffs Lack Standing.

As we will demonstrate further in the MTD, Plaintiffs simply do not have Article III standing.  Plaintiffs must "show they have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

likely to be redressed by a favorable judicial decision.'" *Miedel v. Ally Bank*, No. 1:25-cv-406, 2025 WL 2751533, at *3 (W.D. Mich. Sep. 29, 2025) (Jarbou, C.J.) (citation omitted).  "[T]he plaintiff must 'clearly [] allege facts demonstrating' each element." *Id.* (citation omitted).  "If no plaintiff has standing, then the court lacks subject-matter jurisdiction." *Id.* (citation omitted).  "In a factual attack [on standing], the allegations . . . are not afforded a presumption of truthfulness and the district court weighs competing evidence to determine whether subject matter jurisdiction exists." *Shepherd*, 2023 WL 4056342, at *2.

Plaintiffs do not have standing because they: (1) have no cognizable injury; and (2) any supposed injury is not fairly traceable to Stryker.

1.    *Stryker Has No Evidence Plaintiffs' PII Was Accessed in the Cyberattack.*

Plaintiffs cannot demonstrate that they suffered cognizable injuries.  "Even at the motion-to-dismiss stage, [a plaintiff] must plead specific facts beyond speculation[.]" *Romero*, 159 F.4th at 1015.  Moreover, "[a] plaintiff cannot create an injury by taking precautionary measures against a speculative fear." *Buchholz v. Meyer Njus Tanick. PA*, 946 F.3d 855, 865 (6th Cir. 2020).  Nor can a plaintiff "simply claim[] the existence of a breach" and then "speculat[e] a parade of horribles." *Sifuentes v. Pluto TV*, No. 1:23-cv-1013, 2023 WL 7319434, at *3 (W.D. Mich. Nov. 7, 2023).  Plaintiffs asserting data breach claims typically allege that they received notice that their data *was accessed*—a standard step in data breach incidents generally.  *See, e.g.*, *Polkowski*, 2025 WL 3079358, at *1 (plaintiff who was "informed" by the defendant of access withstood a facial attack on standing).

11

In *Muniz v. Bronson Health Care Group*, the plaintiff alleged that she was injured because her PII was "wrongfully 'obtained,' 'accessed and acquired,' 'misused,' and/or 'accessed and stolen.'"  No. 1:25-cv-693, 2026 WL 1649197, at *3 (W.D. Mich. Jan. 20, 2026).  Unlike Plaintiffs here, Muniz alleged receipt of a notice from the company telling her that her PII was "potentially accessed."  *Id.* Nevertheless, the Court found "the fact of a data breach alone does not demonstrate a cognizable injury" and "without some plausible supporting factual allegations describing misuse or theft, [the plaintiff's] bare allegation" of "mere[] access[]" whereby his data "*might* be sold or otherwise fraudulently used is too speculative to satisfy Article III standing."  *Id.* at *4.

So too here.  Each Plaintiff has experienced numerous prior breaches of their PII.  Hardin Decl. ¶¶ 20, 26, 28, 31, 35, 38, 40, 42.  Moreover, not one Plaintiff has alleged that they received notice from Stryker that their data was accessed, and Stryker has no evidence that it was.  Calderon Decl. ¶ 5.  Without this, they are forced to merely speculate "exposure and theft of [their] PII."  (PageID.99 ¶ 60, PageID.101 ¶ 82, PageID.103 ¶ 100, PageID.105 ¶ 118, PageID.107 ¶ 137, PageID.109 ¶ 154, PageID.111 ¶ 175, PageID.113 ¶ 192).  This is insufficient.

      2.    *Plaintiffs Cannot Show That Any Injury is Fairly Traceable to Stryker.*

Even if Plaintiffs' PII had been accessed in the Cyberattack (and Stryker has no evidence that it was), Plaintiffs still would not have standing because any alleged injuries are not fairly traceable to Stryker.  Plaintiffs must show that their injury "is fairly traceable to . . . the defendant."  *Miedel*, 2025 WL 2751533, at *3.

"[C]onclusory, broad, and speculative allegations that their injury is fairly traceable to the data breach" are not enough. *Blood v. Labette Cnty. Med. Ctr.*, No. 5:22-cv-4036, 2022 WL 11745549, at *3 (D. Kan. Oct. 20, 2022). The claims here are completely speculative. "Data breaches and other forms of data theft are so prevalent that it is seemingly impossible to trace the misuse of personal information to one particular breach." *Williams v. Bienville Orthopaedic Specialists*, 737 F. Supp. 3d 411, 425 (S.D. Miss. 2024). Furthermore, a plaintiff "cannot create an injury by taking precautionary measures against a speculative fear." *Buchholz*, 946 F.3d at 865. Such "[a] self-inflicted injury, by definition, is not traceable to anyone but the plaintiff." *Id.* at 866.

A plaintiff's injury is not fairly traceable when "[t]he Complaint provides no information linking the" putative injuries to the "data breach" at issue. *Williams*, 737 F. Supp. 3d at 424. In *Williams*, the plaintiff alleged he received an alert that "his private information was posted on the dark web," without alleging a link to the breach at issue; "[t]he mere fact" that "some of their PII had been stolen after the data breach is insufficient to show that the misuse of their PII [wa]s fairly traceable to the [defendant's] data breach." 737 F. Supp. 3d at 424-25.

In *Shepherd*, again, the Court found traceability lacking based on a declaration stating that there was no "indication that any of Plaintiff's personal information was compromised." 2023 WL 4056342, at *4-5. "Plaintiff's receipt of spam and phishing communications is not a harm that is 'a consequence of [the defendant's] actions.'" *Id.* at *6 (citation omitted). The plaintiff's "choice to spend

13

time and money mitigating her risk of identity theft was a harm caused by Plaintiff herself." *Id.*

In *Muniz*, the Court found no traceability where plaintiff "speculative[ly]" alleged that she was harmed by the breach and that her data was "obtained, acquired, misused or stolen" based on a company notice of "potential[] access[]," finding that "data access[] . . . *alone* [wa]s [not] sufficient to establish" injury.  2026 WL 1649197, at *3-5 (citations omitted).  Muniz's claims of harm from "monitor[ing] her financial and personal records [we]re self-inflicted," as her actions were based on her speculative fear.  *Id.* at *5.

Plaintiffs here merely speculate that their PII was accessed in the Cyberattack and misused, and that speculation is even greater than what was present in *Shepherd* and *Muniz* because Plaintiffs here have not received a data breach notice.  Plaintiffs cannot demonstrate injury fairly traceable to Stryker.  As their injuries are entirely speculative, their fears and anxiety of future injury and any steps they have taken to monitor are self-inflicted as they are based on speculative fear.

Moreover, "[i]t is a bedrock principle that a federal court" does not have jurisdiction where a plaintiff's injury "results from the independent action of some third party not before the court."  *Murthy v. Missouri*, 603 U.S. 43, 57 (2024).  Here, *each* Plaintiff's data was impacted by numerous data breaches preceding the Cyberattack.  *See* Hardin Decl. ¶¶ 20, 26, 28, 31, 35, 38, 40, 42 (listing incidents of Plaintiffs' prior breaches).

14

Plaintiffs' alleged harms are not traceable to Stryker.  They lack standing.

### III.    Phasing Discovery Promotes Judicial Economy and Will Not Prejudice Plaintiffs.

Limiting discovery to standing is consistent with case law establishing that, without subject matter jurisdiction, the Court may not proceed to the merits. Limiting discovery will promote judicial economy.  It will not prejudice Plaintiffs, who will have an opportunity for full discovery if they establish standing (and hence the prerequisite of subject matter jurisdiction).

### A.    Limited Discovery Will Increase Judicial Economy.

In class actions, courts recognize that phased discovery "serves the interests of justice and efficiency."  *Fania v. Kin Ins.*, No. 22-cv-12354, 2024 WL 2607303, at *2-3 (E.D. Mich. May 24, 2024).  Limiting discovery is warranted when it would "resol[ve] . . . [a] threshold issue," thereby furthering "[c]onvenience, expedition, and economy."  *Little Traverse Bay Bands of Odawa Indians v. Snyder*, 194 F. Supp. 3d 648, 650 (W.D. Mich. 2016).  Courts should use phased discovery to prevent the "expenditure of time and resources litigating claims that may never arise."  *Guido v. Travelers Cos.*, No. 2:23-cv-83, 2023 WL 5658920, at *2 (E.D. Ky. Aug. 31, 2023).

In *US HF Cellular Communications v. Scottsdale*, the Sixth Circuit endorsed a trial court's discretion to "limit discovery" in an insurance dispute to whether an insurance contract existed, terming that "fairly straightforward."  776 F. App'x 275, 290 (6th Cir. 2019).  The Court explained that "plaintiffs would have to prevail on the issue of coverage" for other claims "to be viable," and this approach meant that the parties could avoid "potentially unnecessary" discovery.  *Id.*  In *Series 15-09-321*

*v. Progressive Corp.*, the Court limited discovery to plaintiff's standing as it "would serve the interests of judicial economy by prioritizing a potentially dispositive issue." No. 1:23-cv-02015, 2024 WL 4679223, at *3 (N.D. Ohio Sep. 27, 2024).

Courts recognize that "in the majority of data breach class actions, discovery . . . will be costly," involving expansive discovery requests, depositions, and "experts on matters regarding cyber security," among other things.  *In re Data Breach Sec. Litig. Against Caesars Ent.*, No. 2:23-cv-01447, 2025 WL 2927046, at *2 (D. Nev. Oct. 14, 2025).  Thus, "limited discovery has the potential to . . . save both parties the time and expense of class discovery."  *Fania*, 2024 WL 2607303, at *2 (citation omitted).

Plaintiffs intend to seek expansive discovery on numerous topics which will be improper in the absence of subject matter jurisdiction, with the costs borne by Stryker, the victim of (what is alleged to be) a criminal attack by a nation state. Resolving Plaintiffs' standing before full discovery will promote judicial economy.

### B.    Plaintiffs Will Not Be Prejudiced.

Limited standing discovery will not prejudice Plaintiffs because "there is no general right to discovery upon filing of the complaint." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003).  Plaintiffs "would not appear to suffer prejudice" because "[i]f the plaintiffs prevail on [standing], they preserve the ability thereafter to litigate" and pursue full discovery.  *Guido*, 2023 WL 5658920, at *2. The lack of prejudice to Plaintiffs counsels for limited discovery here.

16

## <u>Conclusion</u>

Stryker respectfully requests that this Court grant Stryker's motion to limit discovery solely to whether the Plaintiffs have Article III standing until a ruling on the MTD.

Dated: June 15, 2026

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Colleen Carey Gulliver*
Colleen Carey Gulliver
1251 Avenue of the Americas
New York, New York 10020
Tel: 212-335-4500
colleen.gulliver@us.dlapiper.com

**MILLER JOHNSON PLC**
D. Andrew Portinga
Amy E. Murphy
45 Ottawa Avenue SW
Suite 1100
Grand Rapids, Michigan 49503
Tel: 616-831-1700
portingaa@millerjohnson.com
murphya@millerjohnson.com

**Certificate of Compliance with Word Count**

Under LCivR 7.3(b)(i), I certify that the foregoing, including the headings, footnotes, citations and quotations, but excluding the case caption, cover sheets, table of contents, table of authorities, and the signature block, contains 4,255 words, and is therefore in compliance with the word limit set in LCivR 7.3(b)(i). The word count was generated by Microsoft® Word for Microsoft 365 MSO (Version 2604 Build 16.0.19929.20172) 64-bit.


Dated: June 15, 2026                       */s/ Colleen Carey Gulliver*
                                             Colleen Carey Gulliver