**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

*In re Stryker Corporation Cyberattack*
*Litigation*

Case No. 1:26-CV-00832-HYJ-PJG

Hon. Hala Y. Jarbou
Hon. Philip J. Green

---

**DECLARATION OF MICHAEL PUCA**
**IN SUPPORT OF STRYKER CORPORATION'S**
**MOTION FOR PHASED DISCOVERY**

I, Michael Puca, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am over the age of eighteen and competent to make this declaration.

2. I am currently the Vice President of Workplace Practices at Stryker Employment Company, LLC ("Stryker Employment"), a subsidiary of Stryker Corporation ("Stryker") that directly employs staff that support Stryker Corporation. In that role, I oversee various human resources functions and employment practices and policies for Stryker employees. In this role I am familiar with Stryker's employee records, communications, and retention practices. I make this declaration based on my personal knowledge of the facts set forth herein and my review of the documents duly maintained by Stryker. If called as a witness, I could and would competently testify to the matters set forth in this declaration.

### *March 11, 2026, Cybersecurity Attack*

3. On March 11, 2026, Stryker announced it experienced a cybersecurity attack ("Cyberattack"). I understand eight individuals claim to be either current or former employees of Stryker and have sued the Company over the Cyberattack:

1

plaintiffs Tom Mesmer, Dax Dodge, Joseph Fredrickson, Scott Mangold, Maurice Primer, Tristan Tanner, Belva Thompson, and Stacy Trepanier ("Plaintiffs").

### *Retention of Employee Files*

4.      I understand that one Plaintiff, Scott Mangold, alleges in paragraphs 105 and 110 of the Consolidated Amended Complaint ("CAC") that he is a "former employee" of Stryker and that Stryker "obtained and continues to maintain Plaintiff's PII."  After Mr. Mangold filed his lawsuit, Stryker instituted a search of its systems and records to verify Mr. Mangold's claim of employment.

5.      Stryker, however, did not locate any files for Mr. Mangold.  Stryker also reviewed what it believes is Mr. Mangold's LinkedIn profile, which claims he was an employee of Stryker from November 2002 – July 2007, and is attached hereto as Exhibit A and was last accessed on April 16, 2026.

6.      If Mr. Mangold's claim of employment from November 2002 through July 2007 is correct, it is not surprising that Stryker's systems did not find any record of Mr. Mangold.  During the November 2002 – July 2007 period and for more than a decade thereafter, Stryker maintained personnel files as physical paper files. Stryker's retention period for an employee's personnel file is a period of six years after their employment ends.  Thus, Stryker would have never created an electronic record of his personnel file and would have ceased retaining the physical personnel file well before the Cyberattack.

### *Payment to Hourly Employees Following Cyberattack*

7.      I understand that one Plaintiff, Dax Dodge, alleges in paragraph 75 of

the CAC that he is an "hourly employee" and "was not paid for at least 34 hours because [Stryker] was not operational" after the Cyberattack.  This is incorrect. Stryker notified employees on March 18, 2026 and March 25, 2026, that they would be made whole for their hours through facility closure pay.  Copies of the communications sent to employees including Mr. Dodge on March 18 and March 25 are attached hereto as Exhibits B and C, respectively.

8.    Moreover, I have reviewed Mr. Dodge's pay records and confirmed he was paid for at least his full 40 hours at his regular hourly rate during the week of the Cyberattack (pay period from March 9-15) and the two weeks after (pay period from March 16-22 and pay period from March 23-29) through a combination of his working hours, vacation pay, sick time, and 55.5 hours of Facility Closure pay.  Mr. Dodge's hours are summarized below.

**Pay Period: March 9-15**

| Hour Type | Number of Hours | Rate |
| --- | --- | --- |
| Facility Closure | 19.75 | Standard hourly rate |
| Regular Hourly | 12.25 | Standard hourly rate |
| Vacation Time | 8 | Standard hourly rate |
| TOTAL: | 40 | |

**Pay Period: March 16-22**

| Hour Type | Number of Hours | Rate |
| --- | --- | --- |
| Facility Closure | 35.75 | Standard hourly rate |
| Regular Hourly | 4.25 | Standard hourly rate |
| TOTAL: | 40 | |

**Pay Period: March 23-29**

| Hour Type | Number of Hours | Rate |
| --- | --- | --- |
| Regular Hourly | 30.5 | Standard hourly rate |
| Vacation Time | 8 | Standard hourly rate |
| Sick Time | 4 | Standard hourly rate |
| TOTAL: | 42.5 | |

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of June 2026.
Kalamazoo, Michigan

_____
Michael Puca